

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

VETA L. ROUNTREE,
    Plaintiff,

    v.                         **Civil Action No. 2:11cv106**

CITY OF PORTSMOUTH,
    Defendant.

## OPINION AND ORDER

This matter comes before the Court upon Defendant City of Portsmouth's ("Defendant")
Motion for Summary Judgment filed on October 7, 2011. Plaintiff Veta L. Rountree ("Plaintiff")
filed a Response on October 22, 2011, and Defendant filed a Reply on October 24, 2011. The
Court has determined that no hearing is necessary. Therefore, the Court hereby **DENIES**
Plaintiff's Request for a Hearing.

Plaintiff alleges Defendant discriminated and retaliated against her, and ultimately
terminated her, on the basis of her race, gender, and age as an African American female above
the age of forty in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et.
seq., the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 1981, 1981a, violated
her due process rights under 42 U.S.C. § 1983, and breached her employment contract under
state law.

For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary
Judgment in its entirety.

## I.   FACTUAL AND PROCEDURAL HISTORY

### A. Facts

The following facts are taken from the evidence in the record and Defendant's statements of undisputed facts to the extent that they are not genuinely controverted by Plaintiff's statements of undisputed facts.[1]   In addition to the record established during discovery, Plaintiff has submitted an Affidavit with her Response that alleges additional facts that create some ambiguity.  However, these additional facts only seem to contradict the previous testimony that Plaintiff gave in her deposition.  To the extent that they do, the Court has disregarded them since the Fourth Circuit has held that "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."  Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (citing Radobenko v. Automated Equipment Co., 520 F.2d 540, 544 (9th Cir. 1975)).

Plaintiff is an African American woman over the age of forty.  Amended Complt. ¶¶ 2, 10.  She was employed as an administrative staff member at the Office of the Assessor for the City of Portsmouth from 2005 until 2009.  Id. at ¶ 10.  At the time of Plaintiff's hiring, the Assessor was Alethia Bryce, who is an African American.  Id. at ¶ 19.  Tawanna Morrow and Marissa Jones, both of whom are African American women, were employed as administrative staff members of the Office of the Assessor while Plaintiff was employed there.  Jones Dep. 6; Morrow Dep. 6-7; Rountree Dep. 10-11.  Maria Kattman became the City Assessor on July 1, 2009.  Kattman Dep. 7-8.  Ms. Kattmann is a Caucasian female.  Amended Complt. ¶ 32.

---

[1] Local Rule 56 provides that "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

During the time that Plaintiff, Ms. Jones, and Ms. Morrow were co-workers, they had a poor working relationship—they had disagreements and got into arguments.[2] Morrow Dep. 10. Ms. Jones and Ms. Morrow referred to the complexion of Plaintiff's skin in a derogatory way—calling her complexion "yellow" and "red" and saying Plaintiff was a "wannabe white girl." Rountree Dep. 8, 11. In her deposition, Plaintiff did not identify any other action by co-workers that made reference to her race or color, and Plaintiff could not recall any comments in this regard being made during Ms. Kattman's tenure as Assessor.[3] Id. at 27, 31. Furthermore, Plaintiff never made Ms. Kattmann aware of her allegations against Ms. Jones and Ms. Morrow and never told her about the racial comments made against her because these incidents took place before Ms. Kattmann started her job at the Office of the Assessor. Id. at 11, 31.

In addition to skin color, Ms. Jones and Ms. Morrow referred to Plaintiff's age relative to theirs in a derogatory way—saying she was twenty and ten years older than they were. Id. at 22. However, no other person in the Assessor's office referred to Plaintiff's age in a derogatory way or had concern over Plaintiff's age, including Ms. Bryce, Ms. Culpepper, Ms. Oxendine, and Ms. Kattman.[4] Id. at 23. When Ms. Bryce learned of the discord between Plaintiff, Ms. Jones, and

---

[2] Plaintiff disputes this fact, but on grounds that are not relevant to the fact trying to be established. It is clear from the record that Plaintiff and her two co-workers did not get along. In her deposition, Plaintiff clearly states that she had a conflict with her co-workers. Rountree Dep. 24.

[3] In her Response, Plaintiff disputes this fact and refers to her Affidavit where she alleges Morrow and Jones made racially derogatory comments daily. Aff. ¶ 9. However, this is not a genuine dispute. In response to the question, "Did anybody else at the assessor's office or the City of Portsmouth ever make any comment to you about your complexion or the color of your skin," Plaintiff clearly states in her deposition, "Not that I recall." Rountree Dep. 27. Furthermore, aside from now alleging that the comments from Jones and Morrow occurred daily, Plaintiff gives no time frame of when these comments were made daily. Her own deposition testimony states that they stopped at some point before Ms. Kattmann came to the office and that they did not occur during the time period Ms. Kattman was Plaintiff's boss. Id. at 11, 31.

[4] In her Response, Plaintiff merely disputes this fact without citing any support for her dispute in the record as required by Federal Rule of Civil Procedure 56(c)(1). Since Plaintiff has failed to properly support or address this fact, the Court may consider it as undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e). Additionally, in her deposition, Plaintiff clearly states that "no one else had a problem with [her] age at the City of Portsmouth." Rountree Dep. at 26.

Ms. Morrow, she referred the three co-workers to the Employee Assistance Program ("EAP") in an effort to help them resolve their differences. Id. at 24, 27-28.[5]

During 2008, for medical reasons, Plaintiff exhausted her leave and encountered difficulty in the processing of leave days without pay. Id. at 46-49. However, prior to her termination, Plaintiff had already received all sums due to her for the work she had performed. Id. at 49.[6]

On May 26, 2009, Plaintiff filed a grievance with the Department of Human Resources Management. Def.'s Ex. A. She sought a lateral transfer and damages based upon claims of color and age discrimination and retaliation. Id. In accordance with the City Grievance Policy, Plaintiff and Defendant each selected a panel member, who in turn selected the chairperson of the panel. Def.'s Ex. B. On July 8, 2009, the City Grievance Panel heard Plaintiff's grievance and afforded her an opportunity to present her evidence, or a summary thereof.[7] Rountree Dep. 37; Def.'s Ex. C. That same day, the Grievance Panel issued a unanimous decision that found no evidence of discrimination, harassment or retaliation on the basis of color or age.[8] Rountree Dep. 37; Def's Ex. C. Plaintiff contends that the grievance panel members discriminated against her because they were Caucasian and agreed against her.[9] Rountree Dep. 37.

On June 30, 2009, Ms. Bryce retired, and on July 1, 2009, Ms. Kattmann succeeded her as City Assessor. Kattmann Dep. 7-8. At no time did Plaintiff personally make Ms. Kattmann

---

[5] Plaintiff disputes this fact, but Plaintiff's argument is without merit. See supra notes 2 and 4 and accompanying text.

[6] Plaintiff disputes both of these facts without citing any support for her dispute in the record as required by Federal Rule of Civil Procedure 56(c)(1). See supra note 4 and accompanying text.

[7] Plaintiff disputes this fact, but Plaintiff's argument is without merit. See supra note 4 and accompanying text.

[8] Plaintiff disputes this fact, but Plaintiff's argument is without merit. See supra note 4 and accompanying text. In her briefings, Plaintiff has tried to make an issue of the fact that the Grievance Panel stated it did not have the authority to award damages as evidence that somehow Plaintiff would have been entitled to damages if the Panel could award them. To the contrary, a plain reading of the Grievance Panel's decision clearly indicates that the Panel found no evidence of discrimination and was merely stating that, regardless of its decision, it had no authority to award damages of any kind. See Def.'s Ex. C.

[9] Plaintiff disputes this fact, but Plaintiff's argument is without merit. See supra note 4 and accompanying text.

aware of any discriminatory racial comments concerning her made by Ms. Jones or Ms. Morrow. Rountree Dep. 11. Furthermore, Plaintiff presents no evidence that Ms. Kattmann was aware of any complaints concerning Plaintiff's age that Ms. Morrow and Ms. Jones had made. See Rountree Dep. 31. Ms. Kattmann was, however, aware that Plaintiff had filed a grievance with the Grievance Panel when she stated working. Kattman Dep. 28.

On July 14, 2009, Ms. Kattmann, the head of the department and Plaintiff's boss, asked Plaintiff to prepare a computer-generated form for Orders of the Board of Equalization to replace a form that had previously been completed by hand.[10] Rountree Dep. Ex. 1; Kattmann Dep. 40-42, 51. Ms. Kattmann testified that Plaintiff refused to perform the task because she believed it was someone else's responsibility.[11] Kattmann Dep. 40-42. See also Rountree Aff. ¶ 22. Later, Plaintiff came into Ms. Kattmann's office and had a discussion with Ms. Kattmann in which Plaintiff referred to at least one of her co-workers as a "bitch." Id. at 44-47.[12]

On July 15, 2009, Ms. Kattmann presented Plaintiff with a Notice of Disciplinary Action. Id. at 47-49. Ms. Kattmann advised Plaintiff that she had been found to have engaged in unethical and/or unprofessional conduct with her and other employees in relation to a work assignment, and that Plaintiff was being terminated from employment effective the next day.[13] Rountree Dep. Ex. 1; Rountree Dep. 15. Ms. Kattmann met with Plaintiff for between ten to

---

[10] Plaintiff disputes this fact, but there is no genuine dispute that Ms. Kattmann was senior to Plaintiff because she was Plaintiff's boss. The fact that Plaintiff had worked at the Office of the Assessor longer than Ms. Kattmann has no bearing on this fact clearly established in the record.

[11] Plaintiff disputes this fact and points to her Affidavit in an attempt to demonstrate that there is a genuine issue of material fact. To the contrary, Plaintiff's Affidavit establishes that she did not do the task she was asked to do. Rountree Aff. ¶ 22. Rather, Plaintiff "told [Ms. Kattmann] whose function it was in the Assessor's Office to complete the forms for next year...." Aff. ¶ 22.

[12] Plaintiff disputes this fact without citing any support for her dispute in the record as required by Federal Rule of Civil Procedure 56(c)(1). See supra note 4 and accompanying text.

[13] Plaintiff disputes both of these facts without citing any support for her dispute in the record as required by Federal Rule of Civil Procedure 56(c)(1). See supra note 4 and accompanying text.

5

thirty minutes during this time.[14] Kattmann Dep. 68. Plaintiff testifies that she did discuss this disciplinary action with Ms. Kattmann on the telephone on July 16, 2009, and that Ms. Kattmann advised Plaintiff that she was not going to change her mind about terminating Plaintiff. Amended Compl. ¶ 31; Rountree Dep. 50, 74-75. Plaintiff's position at the Office of the Assessor was not directly filled upon her termination, but another employee, who was over the age of forty, was later hired for Plaintiff's position.[15] Morrow Dep. 23-24; Jones Dep. 19-20.

Plaintiff's Notice of Disciplinary action states on its face that Plaintiff may have a right of grievance. Rountree Dep. Ex. 1. Nevertheless, Plaintiff did not file a grievance concerning the termination of her employment. Rountree Dep. 50. Prior to her termination, Plaintiff had, however, filed a charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on November 21, 2008. Amended Compl. ¶ 15. Ms. Kattmann was not aware of the charge Plaintiff had filed with the EEOC. Kattman Dep. 28. Following her termination, Plaintiff amended her EEOC Charge of Discrimination on November 13, 2009. Id.

### B. Procedural History

On November 23, 2010, the EEOC concluded its investigation and determined that it was unable to conclude that the information provided by Plaintiff established a violation of the statues. Pl.'s Ex. 2. The EEOC therefore issued a Notice of Right to Sue to Plaintiff. Id.

On February 22, 2011, Plaintiff filed her Complaint against Alethia C. Bryce, Janey Culpepper, Maria Kattmann, and the City of Portsmouth. On March 29, 2011, these defendants

---

[14] Plaintiff disputes this fact, but Plaintiff's argument is without merit. The fact established is merely how long Ms. Kattmann met with Plaintiff when she presented Plaintiff with her Notice of Disciplinary Action—not whether there was a discussion regarding the Notice.

[15] Plaintiff disputes this fact without citing any support for her dispute in the record as required by Federal Rule of Civil Procedure 56(c)(1). See supra note 4 and accompanying text. Regardless, Plaintiff's dispute is without merit and is irrelevant since she contends that Defendant hired a Caucasasian female for Plaintiff's position. This fact merely establishes that the employee hired was over the age of forty, not whether this employee was Caucasian or African American.

collectively filed a Motion to Dismiss Plaintiff's Complaint.  On June 20, 2011, this Court dismissed Plaintiff's Complaint in its entirety but granted Plaintiff leave to amend in accordance with the Court's Order.  The Court found Plaintiff's Complaint was scant on facts, Plaintiff's suit against Culpepper, Kattmann, and Bryce was redundant and duplicative, and there was no legal basis for Plaintiff's request for punitive damages.

In accordance with the Court's Order, Plaintiff filed an Amended Complaint on July 5, 2011.  Defendant filed a timely Answer and subsequently filed its Motion for Summary Judgment on October 7, 2011.  This matter has been fully briefed and is ripe for decision.

## II.    LEGAL STANDARD

### A.  Summary Judgment

In reviewing a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court construes all facts and inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007) (citing United States v. Diebold, Inc., 369 U.S. 564, 655 (1962); Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The Court will grant such a motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Id. at 323–24.

B. *Employment Discrimination*[16]

It is well established in the Fourth Circuit that Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual *with respect to his compensation, terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin." James v. Booz-Allen & Hamilton, 368 F.3d 371, 375 (4th Cir. 2004) (emphasis in original); 42 U.S.C. § 2000e-2(a)(1).

Under the Age Discrimination in Employment Act ("ADEA"), which governs Plaintiff's age discrimination claim, it is "unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Both the ADEA and Title VII prohibit an employer from retaliating against an employee who has asserted his right to be free from discrimination. 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a).

A plaintiff can establish a claim of discrimination or retaliation by presenting direct or indirect evidence of the alleged discrimination. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999). If evidence is not available, a plaintiff may rely on the burden shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this scheme a plaintiff must first establish a prima facie case of discriminatory action, which, in turn, gives rise to a presumption of discrimination. Burgoon v. Potter, 369 F. Supp. 2d 789, 796 (E.D. Va. 2005) (citing McDonnell Douglas, 411 U.S. at 802). Once a plaintiff establishes this presumption, the burden then shifts to the defendant to produce a "legitimate, non-discriminatory reason for its action." Id. (citing McDonnell Douglas, 411 U.S. at 802-03). The defendant has a burden of production, not a burden of proof, which, if met, defeats the presumption of

---

[16] In her Response to this motion, Plaintiff did not cite a single case or reference any applicable case law.

discrimination unless the plaintiff can demonstrate that the employer's proffered explanation is "simply a pretext for intentional discrimination." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)).

If a plaintiff fails to establish a prima facie case of discrimination or to demonstrate that the defendant's proffered legitimate non-discriminatory basis is not believable, the defendant is entitled to summary judgment. Id. (citing Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995); see also Reeves, 530 U.S. at 143. If "no rational fact-finder could conclude that the action was discriminatory," the plaintiff cannot withstand the defendant's motion for summary judgment. Id. (citing Reeves, 530 U.S. at 148). In this case, Plaintiff has not presented any direct or indirect evidence of a discriminatory animus on the part of the employer. Therefore Plaintiff must rely on the McDonnell Douglas burden shifting scheme and establish a prima facie case of discrimination and retaliation.

### III. Analysis

#### A. Count I—Race and Gender Discrimination Violations of 42 U.S.C. § 1981, § 1981A, and Title VII

In her Amended Complaint, Plaintiff claims she was discriminated against on the basis of race and gender in regards to transfer applications, alleged violations of office policy, and termination of employees. However, there are no facts in the record illustrating any reference to discrimination on the basis of Plaintiff's gender. Therefore, the Court examines only Plaintiff's racial discrimination claims.

The elements of a claim alleging a plaintiff was subjected to a hostile work environment are the same under Title VII and 42 U.S.C. § 1981. See Martin v. Merck & Co., Inc., 446 F.

Supp. 2d 615, 619 (W.D. Va. 2006) (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184

(4th Cir. 2001)). To succeed on a claim of a racially hostile work environment, a plaintiff must

demonstrate that the harassment was (1) unwelcome, (2) based on race, (3) sufficiently severe or

pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) that it

was imputable on some factual basis to the employer. Id. (citing Spriggs, 242 F.3d at 183-84);

see also Mathis v. Perry, 996 F. Supp. 503, 522 (E.D. Va. 1997) (citing Hopkins v. Baltimore

Gas & Electric Co., 77 F.3d 745, 753 n.4 (4th Cir. 1996)).

     In order to determine whether a hostile work environment exists, a court must view the

totality of the circumstances, including "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating or a mere offensive utterance; and whether it

unreasonably interferes with the employee's work performance." Harris v. Forklift Sys., Inc.,

510 U.S. 17, 23 (1993). "Isolated...remark[s] even though offensive and entirely inappropriate

[do] not establish an abusive working environment." Mathis, 966 Supp. At 523 (quoting

Williams v. Prince Georges County Hospital Center, 932 F. Supp. 687, 689 (D. Md. 1996), aff'd

103 F.3d 122 (4th Cir. 1996)). Indeed, the existence of a hostile work environment cannot be

"predicated on isolated acts or genuinely trivial" incidents alone. Johnson v. Quin Rivers

Agency for Community Action, 140 F. Supp. 2d 657, 667 (E.D. Va. 2001) (citing Carter v. Ball,

33F.3d 450, 461 (4th Cir. 1994)). Rather, a claim of a hostile working environment under Title

VII requires that the "harassment creating the hostile environment amounts to discrimination in

the way it affects an employee's terms, conditions, or privileges of employment." Meritor

Savings Bank, F.S.B. v. Vinson, 477 U.S. 57, 73 (1986).

     A violation of Title VII occurs "when the workplace is permeated with discriminatory

behavior that is sufficiently severe or pervasive to create a hostile or abusive working

environment under both a reasonable person objective standard as well as a subjective standard where the victim perceives the environment to be abusive." Taylor v. Virginia, 177 F. Supp. 2d 497, 502 (E.D. Va. 2001) (citing Harris, 510 U.S. at 21-22). A court should consider the "frequency of the conduct, its severity, whether there were any physical threats, humiliation or a mere offensive utterance, and whether such actions reasonably interfered with plaintiff's performance." Id. Thus, in order for a hostile environment to amount to a change in the terms or conditions of employment, discriminatory conduct must be extreme, Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), because Title VII "was not [designed] to create a federal remedy for all offensive language and conduct in the workplace." Taylor, 177 F. Supp. 2d at 503 (quoting Hopkins, 77 F.3d at 754).

Even taken in a light most favorable to Plaintiff, the non-moving party, the conduct alleged in the record simply does not rise to the level of creating a hostile work environment. Plaintiff has alleged that two co-workers made references to the shading of her skin color, calling her complexion "yellow" and "red" and saying she was a "wannabe white girl." In her Affidavit, Plaintiff states that her two co-workers made racial comments daily, but she gives no further detail about what those comments were. Plaintiff was given an opportunity to develop the record further in her deposition when asked specifically about what comments were made, but she did not mention anything else besides the comments listed above. The comments made by Plaintiff's co-workers were not acceptable workplace comments. However, since Plaintiff offers no further evidence regarding specific comments besides generally stating that they were made every day, there is no indication that they were pervasive. Furthermore, in her briefings, Plaintiff has not demonstrated how these comments affected the terms of her employment, whether these comments interfered with her performance, or that she received an adverse employment action as

11

a result of her co-workers' comments. Plaintiff has only stated very generally that "her work production was sabotage [sic], her time records were intentionally altered to her detriment, and her medical leave records were improperly altered on several occasions." Pl.'s Resp. 13. However, in support of those general arguments, Plaintiff makes absolutely no citations or references to the record. And she does not explain how these incidents were in any way related to racial discrimination on the part of Defendant. Indeed, even if the comments made by Plaintiff's co-workers could be considered to have created a hostile environment, there is no evidence to suggest that the comments of Plaintiff's co-workers can be imputed to Defendant. To the contrary, it appears from the record that Defendant did not condone such conduct.

Plaintiff has produced no evidence indicating that Defendant had a policy to discriminate or harass on the basis of race, color, or age. When the former City Assessor, Ms. Bryce, learned of the conflict between Plaintiff and her co-workers, she referred all three of them for counseling with the Employee Assistance Program in order to resolve the conflict. Although this counseling was ultimately unsuccessful, it does not demonstrate that Defendant fostered a hostile work environment. Moreover, there is no evidence that the racial comments made by Plaintiff's co-workers had an impact with regard to Ms. Kattmann's decision to take an adverse employment action terminating Plaintiff's employment with the Assessor's office. As the record indicates, Ms. Bryce retired on June 30, 2009. Ms. Kattman became the City Assessor on July 1, 2009, and there is no evidence that she was aware of the specific racial comments underlying Plaintiff's grievance regarding her co-workers or that race played any role in her decision to terminate Plaintiff. Thus, Plaintiff has failed to establish a prima facie case of discriminatory conduct creating a hostile environment.

Even if Plaintiff could establish a prima facie case of discrimination based on race, Defendant has offered clearly legitimate, non-discriminatory explanations for its actions. Indeed, it appears from the record that Plaintiff was terminated because she refused to complete an assignment and used inappropriate language when referring to a co-worker, calling her a "bitch." Nothing in the record indicates that Ms. Kattmann's actions in terminating Plaintiff were in any way motivated by race.

### B. Count III—Age Discrimination[17]

In Count III Plaintiff also alleges that Defendant terminated her employment because of her age. In order to establish this claim, Plaintiff must demonstrate that (1) she was an employee covered by the ADEA, (2) she suffered an unfavorable action by an employer covered by the ADEA, and (3) age was a determining factor—meaning that but for the employer's motive to discriminate against her on the basis of age, Plaintiff would not have been subject to that unfavorable action. Davis v. Old Dominion Tobacco Co., 775 F. Supp. 2d 682, 705 (E.D. Va. 2010) (citing EEOC v. Clay Printing Co., 955 F.2d 936, 940-41 (4th Cir. 1992)).

It is undisputed that Plaintiff is an employee covered by the ADEA, that Defendant is an employer covered under the act, and that Plaintiff suffered an unfavorable action in that she was terminated. However, to be successful, Plaintiff must "produce direct evidence of a stated purpose to discriminate [on the basis of age] and/or circumstantial evidence of a stated material fact." Id. (citing EEOC, 955 F.2d at 941). As the Fourth Circuit has stated, "when a plaintiff admits under oath that he or she cannot point to any statement or piece of physical evidence

---

[17] The Court will first address Plaintiff's age discrimination claim in Count III before turning to Plaintiff's claim of retaliatory discrimination in Count II because Plaintiff's retaliation claims concern her claims in both Counts I and III.

indicative of age discrimination, it undermines the plaintiff's claim." Id. (citing EEOC, 955 F.2d at 941). In Plaintiff's deposition she stated that the only evidence of age discrimination was the comments made by her two co-workers that she was ten and twenty years older than they were, that she was "old," and that she was too old to work in the office. There is no evidence in the record, however, that Defendant had a stated purpose to discriminate against Plaintiff when it fired her or that Plaintiff was treated differently at work, let alone on account of her age, than any other employee at work. In fact, Plaintiff stated in her deposition that none of her supervisors or the other senior members in the Office of the Assessor had an issue with her age or even referred to her age at any point in time. Indeed, aside from her two co-workers, Plaintiff was not aware of anyone else who worked for Defendant that had an issue with her age.

As with her race discrimination claim, Plaintiff may resort to the McDonnell Douglas burden-shifting scheme. Id. (citing EEOC, 955 F.2d at 941). In order to establish a prima facie case of age discrimination in terminating an employee, the plaintiff must show (1) she was an employee covered by the ADEA, (2) she was fired by an employer covered by the ADEA, (3) at the time she was fired, she was performing at a satisfactory level, meeting her employer's legitimate expectations, and (4) following her firing, she was replaced by a person outside the protected class. Id. (citing EEOC, 955 F.2d at 241). Here, Plaintiff meets the first two elements, but she offers no evidence to establish that her replacement was outside the protected class besides stating in her Complaint that, upon information and belief, a person outside the protected class was hired by Defendant. On the contrary, the evidence in the record, namely deposition testimony by Ms. Morrow and Ms. Jones, shows that an employee over the age of forty was subsequently hired by Defendant. Therefore, since Plaintiff can meet neither standard for stating a claim, her age discrimination claim fails.

## C. Count II— Retaliatory Discrimination

In Count II Plaintiff claims that Defendant retaliated against her for the grievance she filed with Defendant, for the leave she took in accordance with the Family Medical Leave Act ("FMLA"), and for the charges she filed with the EEOC. Under 42 U.S.C. § 2000e-3(a), an employer may not retaliate against an employee who opposes an unlawful employment practice, files a charge of discrimination, or participates in the investigation of such a charge. In order to succeed in a retaliation claim under Title VII, a plaintiff must demonstrate that (1) she was engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

Under the first prong of proving a retaliation claim, in order for a plaintiff to be considered as engaged in a protected activity, the plaintiff must reasonably believe that the employment practice she is opposing is unlawful. Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir. 2006). For the reasons set forth above, Plaintiff did not have a reasonable basis to believe that the actions of Defendant were unlawful. Even if Plaintiff had a reasonable basis to believe Defendant's actions were unlawful, she would still need to demonstrate a causal connection between her filing of an EEOC complaint and her grievance with Defendant and Ms. Kattmann's decision to fire her. Plaintiff has failed to do so. She has shown no evidence demonstrating that Ms. Kattmann was motivated by Plaintiff's grievances to retaliate against her. Indeed, Plaintiff had filed her EEOC complaint and City grievance before Ms. Kattmann even became her supervisor, and the alleged discriminatory behavior all took place under Ms. Kattmann's predecessor, Ms. Bryce. While the record indicates Ms. Kattmann was aware of Plaintiff's grievance with Defendant, there is no evidence to indicate Ms. Kattmann

15

knew of Plaintiff's EEOC grievance.  Contrary to what Plaintiff claims, the record more clearly

establishes that Plaintiff was terminated for her unprofessional conduct.

Plaintiff also alleges retaliation by Defendant under the FMLA in that Defendant created

a hostile and harassing work environment upon Plaintiff's return to work after a disability period

in 2009.  Under the FMLA, an employee has the right to be free from retaliation against her for

taking authorized leave.  See Dotson v. Pfizer, 558 F.3d 284, 294-95 (4th Cir. 2009).  Employers

may not use the taking of authorized leave as the basis for negative treatment in hiring,

promotion, or discipline.  29 C.F.R. § 825.220(c).  The only basis for a retaliation claim under

the FLMA that Plaintiff provides is that there were irregularities in her pay upon her return from

FMLA leave.  From the limited record regarding this issue, it appears that Plaintiff ran out of

annual leave and was being paid on a days-worked basis.  Plaintiff contends that her pay was not

correct at times or withheld—the result of overpaying Plaintiff at one point and then requiring

her to pay Defendant back for these overpayments.  Indeed, the City Grievance Panel stated in its

decision that the department correctly "adhered to City's payroll policies and procedures" with

respect to Plaintiff's compensation.  Pl.'s Ex. 6.  However, the Panel felt that the department

needed to do a better job of "communicating changes in an individual's payroll in regards to

leave without pay."  Id.  Regardless, in her deposition testimony, Plaintiff states that when she

was terminated, she had been paid for all of the days she had worked.  Thus, based on these

facts, Plaintiff has not established a claim of retaliation under the FMLA.


D. *Count IV—42 U.S.C. § 1983 Violations*

In her Complaint Plaintiff alleges that she had a vested interest in her continued

employment as a public employee and that this liberty and property interest was denied due to a

lack of procedural and substantive due process. However, Plaintiff makes no further claims alleging how she was unconstitutionally deprived of liberty in her Complaint. Therefore, the Court only addresses Plaintiff's specific allegations of how she was unconstitutionally deprived of her alleged property interest in continued employment.[18]

In order to succeed, Plaintiff's federal constitutional claim depends on her having had a property right in continued employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 539 (1985). As the Supreme Court stated in Loudermill, "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Paul v. Davis, 424 U.S. 693, 709 (1976). In Loudermill an Ohio statute created a property interest because the plaintiff was classified as a civil service employee who could only be terminated for cause as specifically laid out in the statute.

In the present case, Plaintiff argues that she has a property interest in employment based on the City of Portsmouth's ordinances, specifically Defendant's Administrative Policy #11, the Grievance Procedure. Yet, Plaintiff does not specify which portion of Administrative Policy #11 gives her a property interest in her employment. Furthermore, Plaintiff points to no Virginia state law whatsoever demonstrating that she has a property interest in her employment. Rather, without citing any relevant Virginia law in support of her claim, Plaintiff alleges that a contract of employment was created when she completed her twelve-month probationary period at the Assessor's office. Under Virginia law, a general hiring where the term of employment is not

---

[18] In her Response to the instant motion, Plaintiff alleges that her liberty interest in due process has been denied in that Defendant has labeled her an "unethical and unprofessional office worker," a "stigma" that has interfered with her future employment opportunity. Pl.'s Resp. 18. However, Plaintiff has not made any assertions that Defendant made Plaintiff's termination public or alleged how her termination has affected her subsequent job search except by generally stating that Plaintiff has been unable to find a new job.

specified is presumed to be terminable at will. See Hoffman Specialty Co. v. Pelouze, 158 Va. 586, 164 S.E. 397 (1932). An employee at will can be discharged for any reason or for no reason at all. Id. This presumption of employment at will, however, may be rebutted. See Sea–Land Service, Inc. v. O'Neal, 224 Va. 343, 297 S.E.2d 647 (1982). Here, the record demonstrates that when Plaintiff was hired, the duration of her employment was not fixed and, consequently, was presumptively at will.

Plaintiff's allegations regarding her probationary period could perhaps serve to rebut this presumption if they could establish that plaintiff could only be discharged for cause. See, e.g., Thompson v. King's Entertainment Co., 674 F. Supp. 1194 (E.D.Va.1987) (handbook containing "just cause" provision, which was issued after plaintiff's employment began, could constitute a new offer of employment which plaintiff accepted by continued employment). Yet they do not. As outlined in Defendant's New Employee Orientation Program Form, which Plaintiff signed, Defendant's twelve-month probationary period does not grant probationary employees grievance rights under Defendant's Grievance Procedure. Pl.'s Ex. 3. Once Plaintiff completed the twelve-month probationary period, she gained rights under the Grievance Procedure, Administrative Policy #11. However, nothing in the Grievance Policy states that Defendant could only terminate Plaintiff for cause. See Def.'s Ex. B.

As stated in the "Objective" of Defendant's Grievance Policy, it is designed to understand and settle employee problems as soon as possible. Id. at 1. A grievance is defined to include disciplinary actions and dismissals resulting from unsatisfactory job performance, but nothing in Administrative Policy #11 limits Defendant's ability to terminate its employees at will. Id. at 2. Indeed, Administrative Policy #11 specifically states that a different Administrative Policy concerning Standards of Conduct and Disciplinary Action constitutes the

18

"written policy governing all matters of discipline," and it is the basis on which employees are disciplined. Id. at 11. Thus, contrary to Plaintiff's assertions, there is no factual dispute whether Defendant's probation period and grievance procedure gave Plaintiff a property interest in her employment. She was clearly an at-will employee, and her constitutional claim therefore fails.

### E.  Count V—Breach of Contract

Under Count V Plaintiff claims she became a permanent employee upon the completion of her probationary period and that Defendant thereby had a contractual obligation not to terminate Plaintiff's employment without good cause. For the reasons set forth above, the Court finds that no employment contract existed between Plaintiff and Defendant. Plaintiff was an at-will employee, and therefore, her claim fails.

### IV.    Conclusion

Defendant has carried its burden of establishing that, even viewing the record in the light most favorable to Plaintiff, no genuine issues of material fact exist in this case. Celotex Corp., 477 U.S. at 322-24. Plaintiff has failed to produce any evidence for the record establishing the existence of a triable issue. Furthermore, Defendant has demonstrated the "absence of evidence to support the non-moving party's case." Celotex Corp., 477 U.S. at 324. In the face of evidence submitted by Defendant to this effect, Plaintiff cannot rely merely on the allegations made in her pleadings and still survive summary judgment. See Fed. R. Civ. P. 56(e).

Therefore, based on the record and the briefs of the parties, and for the reasons stated herein, the Court **DENIES** Plaintiff's Request for Hearing and **GRANTS** Defendant's Motion for Summary Judgment in its entirety.  This case is hereby **DISMISSED**, and the Court

**ORDERS** judgment to be entered for Defendant.  The Clerk is **DIRECTED** to transmit a copy of this Order to the all Counsel of Record.

**IT IS SO ORDERED**.

Norfolk, Virginia

October 26, 2011

Robert G. Doumar /s/
Senior United States District Judge